[Civ. No. 65137. Second Dist., Div. Five. Nov. 23, 1982.]

JOSEPH WESTRICK et al., Plaintiffs and Appellants, v.
STATE FARM INSURANCE et al., Defendants and Respondents.

COUNSEL

Perona & Langer and Wayne M. Robertshaw for Plaintiffs and Appellants.

Portigal & Hammerton and Barry L. Allen for Defendants and Respondents.

OPINION

ASHBY, J.—Appellants Joseph Westrick and his son Vincent appeal from a directed verdict in favor of Doug Crawford, Joseph Westrick's insurance agent, and State Farm Insurance (State Farm), his insurance company.

In their complaint, appellants claimed that Jim Crawford, Doug Crawford's father and also a State Farm agent, negligently failed to inform Joseph Westrick that a welding truck which later became involved in an accident was not covered under Westrick's existing insurance policy. Appellants prayed for declaratory relief to establish coverage under the policy, and in the alternative, for damages under theories of negligent misrepresentation, negligence and

estoppel. The trial court decided to dispose of the equitable issues first and heard evidence from all parties. During this presentation, appellants' counsel stipulated that Joseph Westrick's insurance policy did not in fact cover the six-wheel welding truck,[1] and thereafter proceeded on his negligence theories alone. After both sides rested, the trial judge declared that he had found no factual issues requiring determination by a jury: resolving all conflicts in appellants' favor, respondents as a matter of law owed no duty to warn Joseph Westrick of the lack of coverage. Appellants assert they presented sufficient evidence of respondents' negligence to warrant a jury trial.

The parties testified to the following facts. Joseph Westrick stated he had been insured with State Farm since 1964. When Doug Crawford became his insurance agent in 1975, Westrick owned two vehicles, a 1970 Cadillac and a 1964 Volvo, both of which were insured with State Farm.

In May 1977, Westrick considered the purchase of a military-type jeep pickup truck for use in his agricultural real estate business. State Farm agents had previously mentioned the 30-day automatic coverage clause of his policy. Westrick called Doug Crawford, described the vehicle he planned to purchase as a four-wheel pickup truck, and asked whether his policy would cover the truck during the drive from the seller's place of business to Westrick's home. Doug Crawford responded that the truck would be covered for 30 days, but Westrick should "let him know just as soon as possible." Westrick did not, however, purchase the jeep truck.

In early July 1977, Westrick purchased a welding business for his son Vincent, who was living with his parents at the time. As part of the welding business, Westrick bought a 1965 Dodge pickup truck and a 1948 Ford one and a half ton welding truck. On July 18, he called Doug Crawford's office to secure insurance for the vehicles. Doug Crawford, however, was not there and Jim Crawford, Doug's father and also a State Farm agent, answered the phone. Westrick related the conversation as follows: "Well, I asked for Doug Crawford, and [Jim] informed me that Doug was fishing and had the day off, and I informed him that I had purchased a welding business, and that there were two vehicles involved, and I gave the year of the Dodge truck, and I gave him the tonnage, and then I told him about the '48 Ford ton and a half welding truck that I wanted insurance coverage, and I offered him the serial numbers and the license plates, and he said that wouldn't be necessary. Doug will be in the following day, and I said, well, inform Doug that I'll be in."

---

[1] Joseph Westrick's insurance policy provided for 30 days of automatic coverage for any newly acquired automobile if "it replaces an *automobile* . . . covered by this policy, or the company insures all *automobiles* owned by the named insured . . . ." The term "automobile" was defined as "a *four wheel* land motor vehicle designed for use principally upon public roads . . . ." (Italics added.)

On the same night, Joseph Westrick informed Vincent he had insurance and could drive the welding truck the next day on the job. On July 19, Vincent drove the truck out of the business yard and at 2:30 p.m. was involved in an accident. The truck was not in fact insured.

Doug Crawford could not recall any conversation about automatic coverage on a jeep pickup truck. He stated that before the accident, he did not know if automatic coverage applied to commercial vehicles and would have had to call his home office to find out. He also did not know whether State Farm would have been willing to insure a 1948 Ford truck. He admitted, however, that he had power to bind coverage on a pickup used in the agricultural real estate business. He further testified that he and his father worked in the same office and used the same phone number, but serviced different clients. Since the Crawfords had no employees, father and son answered each other's calls in the other's absence and routinely wrote insurance or handled claims for the other's clients. Doug Crawford thought his father's conversation with Joseph Westrick took place on the 19th of July instead of the 18th, and he did not learn of the call until the 20th.

Jim Crawford recalled that his conversation with Joseph Westrick took place on July 19. He understood that Westrick's purpose was to inquire about insurance for the trucks, and admitted he could have issued a binder on behalf of his son provided the vehicles met the company's underwriting standards. However, he never discussed whether the trucks were or could be insured and made no further inquiries because Westrick wanted to talk to Doug, not to him.

Richard Mortimer, an insurance broker who gave expert testimony on appellants' behalf, testified that according to the standard of care in the insurance industry, an agent in Jim Crawford's situation receiving Westrick's call had a duty to inquire whether the vehicles were covered under the existing policy and to warn the insured not to drive them until insurance was procured. Mortimer himself would have issued a binder on the 1948 truck if the client had presented brake and license certifications.

Finally, Robert Knutsen, a State Farm underwriter, testified that his company generally insured six-wheel vehicles, but declined to insure Westrick's welding truck when Doug Crawford called him about it sometime in July of 1977.

## DISCUSSION

On appeal from a directed verdict, we view the evidence and all reasonable inferences therefrom in the light most favorable to appellants. (*Better Food Mkts.* v. *Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179, 182 [253 P.2d

10, 42 A.L.R.2d 580].) ■ Here, a jury could have found that in May of 1977, Doug Crawford told Westrick a jeep pickup truck to be used for commercial purposes would be automatically insured under his policy. When Westrick called the agency in July of 1977 to obtain insurance for his new commercial vehicles, Jim Crawford understood the purpose of the call, but simply ignored the situation, told Westrick that specific identification of the vehicles "wouldn't be necessary," and referred him to his son. Westrick was unaware of the specific policy provision excluding six-wheel vehicles from coverage and relied on Jim Crawford's expertise. Since he had not been told anything to the contrary, he reasonably believed that his new trucks, just as the pickup truck, were automatically insured for 30 days, and gave his son permission to drive the welding truck on the job. Had he known the truck was not covered, he would not have allowed Vincent to use it until insurance had been obtained. We hold that this evidence, if believed by a jury, would have sustained a finding of Doug Crawford's[2] negligence; the directed verdict was therefore improper.

Respondents maintain they were entitled to a directed verdict because (1) Westrick never requested insurance; (2) even if he did, he requested it of Doug Crawford instead of Jim, and did not rely on Jim Crawford as his agent; (3) an insurance agent cannot be liable for an insured's lack of coverage unless the agent has first expressly promised to procure the coverage; and (4) Westrick's reliance on the automatic coverage clause was in any case unreasonable.

Respondents' first contention regarding Westrick's failure to request insurance is not sustained by the record. Westrick testified that he told Jim Crawford "about the '48 Ford ton and a half welding truck that [he] wanted insurance coverage [for] . . . ." We believe he communicated his request with sufficient clarity. Moreover, Jim Crawford admitted that he understood Westrick was calling about insurance for his trucks. Drawing all reasonable inferences in appellants' favor, it is obvious that Westrick requested coverage for his vehicles. (See *Better Food Mkts.* v. *Amer. Dist. Teleg. Co., supra,* 40 Cal.2d 179, 182.)

Next, respondents assert that appellant intended Doug Crawford, not Jim, to respond to his request, and knew no action would be taken until Jim was available. Westrick's testimony of his conversation with Jim Crawford paints a different picture, however. When Westrick heard Doug Crawford was absent, he began to describe the business and his vehicles to Jim and refrained from furnishing more detailed information only after Jim Crawford indicated "that wouldn't be necessary." If believed, this testimony indicates Westrick's reliance on Jim Crawford's knowledge and expertise in Doug's absence.

---

[2]We intimate no opinion concerning State Farm's liability. This issue was not reached below and need not be decided at this state of the proceedings.

Moreover, Jim and Doug Crawford were each other's agents by mutual agreement, each having the power to fully respond to requests for insurance by the other's clients. (See Civ. Code, § 2299.) "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (Civ. Code, § 2332; *Northern Natural Gas Co.* v. *Superior Court* (1976) 64 Cal.App.3d 983, 992 [134 Cal.Rptr. 850].) At this stage of the proceedings, we cannot say appellants' cause of action is defeated as a matter of law because he could not rely on Jim Crawford's expertise or because Jim and Doug Crawford had no notice of each other's conduct.

■ Respondents argue forcefully that an insurance agent cannot be liable for damages arising from a client's lack of coverage unless the agent expressly promised to obtain the insurance but negligently failed to do so. They maintain that neither Doug nor Jim Crawford ever promised to procure coverage for the welding truck: Doug's statements concerning automatic coverage related solely to a four-wheel pickup, and Jim made no promises or representations of any kind. However, while an insurance agent who promises to procure insurance will indeed be liable for his negligent failure to do so (see, e.g., *Dana* v. *Sutton Motor Sales* (1961) 56 Cal.2d 284, 287 [14 Cal.Rptr. 649, 363 P.2d 881]; *Greenfield* v. *Insurance Inc.* (1971) 19 Cal.App.3d 803, 810 [97 Cal.Rptr. 164]), it does not follow that he can avoid liability for foreseeable harm caused by his silence or inaction merely because he has not expressly promised to assume responsibility.

A long line of California cases has recognized that a disparity of knowledge may impose an affirmative duty of disclosure. (See, e.g., *Wells* v. *John Hancock Mut. Life Ins. Co.* (1978) 85 Cal.App.3d 66, 72 [149 Cal.Rptr. 171]; *Hawkins* v. *Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 125 [331 P.2d 742]; *Curran* v. *Heslop* (1953) 115 Cal.App.2d 476, 480 [252 P.2d 378]; *Rothstein* v. *Janss Investment Corp.* (1941) 45 Cal.App.2d 64, 68 [113 P.2d 465].)[3] In the insurance field, the quasi-public nature of the insurer's obligation imposes upon him a duty of good faith and fair dealing, which requires the insurer to "'give at least as much consideration to the [insured's] interests as it does to its own.'" (Italics omitted.) (*Davis* v. *Blue Cross of*

---

[3]"The rule is stated in the Restatement Second of Torts in section 551 as follows: '(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question. (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.'" (*Wells* v. *John Hancock Mut. Life Ins. Co.*, *supra*, 85 Cal.App.3d at p. 72, fn. 8.)

*Northern California* (1979) 25 Cal.3d 418, 427 [158 Cal.Rptr. 828, 600 P.2d 1060]; see also *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818-819 [169 Cal.Rptr. 691, 620 P.2d 141]; *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 667-670 [79 Cal.Rptr. 106, 456 P.2d 674]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269-271 [54 Cal.Rptr. 104, 419 P.2d 168].) Since " '[i]t is a matter almost of common knowledge that a very small percentage of policy-holders are actually cognizant of the provisions of their policies . . . [and t]he insured usually confides implicitly in the agent securing the insurance . . . .' " (*Raulet* v. *Northwestern etc. Ins. Co.* (1910) 157 Cal. 213, 230 [107 P. 292]; *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 783 [157 Cal.Rptr. 392, 598 P.2d 45]), the insurer's duty includes the duty "reasonably to inform an insured of the insured's rights and obligations under the insurance policy." (*Davis* v. *Blue Cross of Northern California, supra,* 25 Cal.3d at p. 428.) Thus, California courts have imposed a duty on the insurer to advise its insureds of the availability of and procedure for initiating arbitration (*Davis* v. *Blue Cross of Northern California, supra,* at pp. 424-431); to notify him of a 31-day option period in which to convert his group insurance policy into individual coverage after termination (*Walker* v. *Occidental Life Ins. Co.* (1967) 67 Cal.2d 518, 523-524 [63 Cal.Rptr. 45, 432 P.2d 741]); and to notify an assignee of a life insurance policy taken as security for a loan to the insured of previous assignments of the policy known to the insurer (*Wells* v. *John Hancock Mut. Life Ins. Co., supra,* 85 Cal.App.3d at pp. 70-72).

█ In the instant case, assuming appellant's testimony to be true, Westrick's request for insurance, his previous questions and long relationship with the agency, and the foreseeability of harm, obligated Jim Crawford to respond to the request with further inquiries. As between himself and Joseph Westrick, Jim Crawford had superior knowledge concerning the scope of the automatic coverage clause; under the circumstances, we find it only "just and equitable" to require him to explain the limiting provisions to Westrick. (See *Wyatt* v. *Union Mortgage Ins. Co., supra,* 24 Cal.3d 773, 783.)

We find no reason to distinguish between the misfeasance of giving erroneous information and the nonfeasance of giving no information at all. "Given a relation involving in its existence a duty of care irrespective of a contract, a tort may result as well from acts of omission as of commission in the fulfillment of the duty thus recognized by law." (*H. R. Moch Co.* v. *Rensselaer Water Co.* (1928) 247 N.Y. 160 [159 N.E. 896, 898, 62 A.L.R. 1199]; see also *Transamerica Title Insurance Co.* v. *Ramsey* (Alaska 1973) 507 P.2d 492.) In the instant case, appellants presented sufficient evidence to warrant a jury determination on the questions of Jim and Doug Crawford's duty, the foreseeability of harm, and the connection between the agents' conduct and

Westrick's loss.[4] The fact that Jim Crawford's conduct consisted of inaction instead of a wrongful action is not determinative.

█ Lastly, respondents assert that Westrick could not reasonably assume his policy covering four-wheel passenger vehicles also applied to a six-wheel commercial truck. Respondents cite *U-Haul Co. of Southern Cal., Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1975) 50 Cal.App.3d 665, 668-669 [123 Cal.Rptr. 628], where the court found the plaintiff's expectation that a sixteen-foot, six-wheel furniture moving truck was covered under a policy for his Toyota two-door sedan was unreasonable. However, the plaintiff in *U-Haul* presented no evidence of a previous inquiry about another commercial vehicle, of attempts to furnish the truck's identification number to his agent, or of the agent's response that such identification "wouldn't be necessary." The evidence here, if believed, sufficiently distinguishes the case.

The judgment is reversed.

Feinerman, P. J., and Stephens, J., concurred.

---

[4]We note Doug Crawford's testimony that before the accident, he would have responded to a phone call by one of his father's clients as his father did. Now, however, he would no longer simply refer the call, but would discuss the situation at length. Moreover, the expert testimony indicated the duty at issue here is already well understood in the insurance industry.