[No. D012947. Fourth Dist., Div. One. Mar. 2, 1992.]

PAMELA J. MALCOM et al., Plaintiffs and Appellants, v.
FARMERS NEW WORLD LIFE INSURANCE COMPANY, Defendant
and Respondent.

## COUNSEL

Charles T. McCutcheon for Plaintiffs and Appellants.

Cotkin, Collins & Franscell, William D. Naeve and Amy E. Abdo, for Defendant and Respondent.

## OPINION

**KREMER, P. J.**—Plaintiffs Pamela Malcom (Pamela) and Medmetric Corporation (Medmetric) appeal summary judgment favoring defendant Farmers New World Life Insurance Company (Farmers) on their first amended complaint for breach of life insurance contracts. Plaintiffs contend the court erred in determining the contracts' suicide provision to be plain, clear, conspicuous and unambiguous as a matter of law. Plaintiffs also contend the court erred in concluding Farmers did not owe the decedent insured

Lawrence Malcom (Lawrence)[1] an affirmative duty at time of purchase to advise him of the suicide provision's limiting effect. We affirm the summary judgment.

## I

### FACTS

We state the undisputed facts in the record.

In 1982 Farmers issued and delivered two $100,000 policies on Lawrence's life with plaintiffs as beneficiaries.

Each policy contained a clause providing: "Suicide, whether sane or insane, will not be a risk assumed during the first two policy years. In such a case we will refund the premiums paid."

In May 1984, within two years after the policies were issued, Lawrence committed suicide.[2]

In July 1984 Farmers received plaintiffs' claims seeking each policy's $100,000 benefit.

In December 1984 Farmers declined plaintiffs' claims on the basis Lawrence's death constituted a suicide occurring within the first two policy years.

## II

### SUPERIOR COURT PROCEEDINGS

#### A

#### PLAINTIFFS' PLEADING

In December 1988 plaintiffs sued Farmers.

---

[1] For purposes of clarity we refer to the Malcoms by their first names.

[2] The parties stipulated Lawrence's death constituted a "suicide" under *Searle* v. *Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 437 [212 Cal.Rptr. 466, 696 P.2d 1308]. In *Searle* the Supreme Court stated the burden of proving suicide "requires more than proof of the act of self-destruction, the proof must further establish that the act was committed with suicidal intent, i.e., the purposeful or intentional causing of death." (*Id.* at p. 437, fn. omitted.)

Plaintiffs' first amended complaint alleged Farmers breached the contracts by not paying plaintiffs' claims for benefits "for covered risks which were not specifically excluded under the contracts [*sic*] terms." Plaintiffs also alleged Farmers should have known Lawrence was a high suicide risk based on discussions with Lawrence and his insurance applications' disclosure of his history of observation, care, and hospital treatment for depression.

## B

### FARMERS' MOTION FOR SUMMARY JUDGMENT

Farmers sought summary judgment, asserting it was not obligated to pay plaintiffs benefits because the policies clearly, conspicuously and unambiguously precluded coverage for death by suicide within the first two policy years.

After hearing, the court stated the policies' suicide provision was "conspicuous," "bold," "clear" and "unambiguous." The court granted Farmers' motion for summary judgment. Plaintiffs appeal.

## III

### DISCUSSION

Plaintiffs seek reversal of the summary judgment, asserting the superior court erred in determining the policies' suicide provision to be plain, clear, conspicuous and unambiguous. Plaintiffs also contend the suicide provision's asserted ambiguity prevented the policies as a whole from meeting Lawrence's reasonable expectation of coverage. Plaintiffs further contend circumstances at the time of purchase imposed on Farmers a legal duty—assertedly breached by Farmers—to point out the suicide provision and explain its limited effect to Lawrence. Interpretation of the meaning of Farmers' policies' language is a question of law for our independent determination. (*Fragomeno* v. *Insurance Co. of the West* (1989) 207 Cal.App.3d 822, 827 [255 Cal.Rptr. 111].) We conclude as a matter of law the suicide provision barred plaintiffs' benefit claims.

## A

### SUICIDE PROVISION WAS PLAIN, CLEAR AND CONSPICUOUS

Plaintiffs contend the suicide provision is not "plain and clear" and "conspicuous." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513 [485 P.2d 1129, 48 A.L.R.3d 1089].) It is.

1

"To be plain and clear, the substance of the exclusion must be precise and understandable. 'To be effective in this context, the exclusion must be couched in words which are part of the working vocabulary of average lay persons.' [Citation.]" (*Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 184 [231 Cal.Rptr. 791].) That is, precision alone is not enough, understandability is also required. (*Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 723 [193 Cal.Rptr. 632].)

At the hearing on Farmers' motion for summary judgment, plaintiffs' counsel, while contesting conspicuousness, conceded the language of the suicide provision was "plain and clear." Plaintiffs now contend the court should not have found the suicide provision to be plain and clear because its words "a risk assumed" were assertedly "words of art in the insurance industry and are not used in the normal manner in which they are used by lay persons." Plaintiffs also assert the suicide provision was unclear in not specifying whether risks were assumed by the insured or by the insurer. Assuming plaintiffs may raise those contentions on appeal despite their concession in superior court, we conclude as a matter of law the suicide provision was plain and clear.

Farmers' policies' suicide provision contains only 27 words. The provision states: "Suicide, whether sane or insane, will not be a risk assumed during the first two policy years. In such a case we will refund the premiums paid." None of those words was beyond the working vocabulary of lay persons. Further, the suicide provision's second sentence expressly states *Farmers* would refund premiums for claims for suicide occurring within the policies' first two years. Thus, the policies clearly identified Farmers as the party not assuming risk of loss for such suicides. Where, as here, an insurer has clearly limited its coverage, the limitation's plain language must be respected. (*Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286, 1296 [238 Cal.Rptr. 36].)[3]

---

[3]We also reject plaintiffs' similar contention the suicide clause was ambiguous because it could be read to mean that Lawrence did not have to worry about assuming any risk of suicide during the policies' first two years. Courts may not fabricate an ambiguity through a strained or absurd construction of otherwise clear language. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].) The words in question here manifestly referred to suicide occurring within the policies' first two years and made clear Farmers assumed no risk for such suicide. Since the provision is unambiguous plaintiffs' contention coverage should be extended consistent with Lawrence's reasonable expectations also fails. "The doctrine of reasonable expectation of coverage is applicable only where the language of the policy is ambiguous. [Citations.]" (*Hallmark Ins. Co.* v. *Superior Court* (1988)

2

■ "To be conspicuous, an exclusion must be positioned in a place and printed in a form which will attract the reader's attention. [Citation.]" (*Travelers Ins. Co.* v. *Lesher, supra,* 187 Cal.App.3d at p. 184.)

Farmers' policies mentioned suicide twice. On the policies' second page, the "Alphabetic Guide to Your Policy" listed "Suicide" and the suicide provision's location in the policy. Following the page with the alphabetic guide was the page containing the suicide provision.

Plaintiffs contend the policies' two references to suicide were not conspicuous. Plaintiffs assert the alphabetic guide's reference to suicide appeared in small type as the 31st of 32 items. Plaintiffs assert the suicide provision appeared as the sixth item in an eight-item list in the second column of the policies' "General Provisions." However, we conclude the suicide provision was in a place and form readily attracting the reader's attention. (*Travelers Ins. Co.* v. *Lesher, supra,* 187 Cal.App.3d at p. 184.)

The suicide provision was located on the policy's third page—the first operative page after the cover page and the alphabetical guide—and preceded by the bold-faced capitalized word "SUICIDE." The suicide provision contained only 27 words and was clearly separated from its neighboring provisions by several blank lines and blank spaces. The provision was neither submerged in "a sea of print" nor "inserted incidentally in a paragraph dealing with promised benefits." (*Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735, 737-740 [74 Cal.Rptr. 367].) Nor was it otherwise hidden or obscured. (Compare *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 752 [161 Cal.Rptr. 322]; *Ponder* v. *Blue Cross of Southern California, supra,* 145 Cal.App.3d at pp. 722-723; *Fields* v. *Blue Shield of California* (1985) 163 Cal.App.3d 570, 579 [209 Cal.Rptr. 781]; also *Davis* v. *United Services Auto. Assn.* (1990) 223 Cal.App.3d 1322, 1332-1333 [273 Cal.Rptr. 224].)

In sum, Farmers had the right to limit its policies' coverage. (*Blumberg* v. *Guarantee Ins. Co., supra,* 192 Cal.App.3d at p. 1296.) The suicide provision clearly and conspicuously conveyed its message in understandable language. (*Ibid.*)

---

201 Cal.App.3d 1014, 1019 [247 Cal.Rptr. 638]; also *Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d at p. 912.)

B

## Farmers Had No Duty to Point Out and Explain Suicide Provision

 Plaintiffs contend the summary judgment should be reversed because the record assertedly contained triable material factual issues about whether at the time Lawrence bought the policies Farmers owed him an affirmative duty to point out the suicide provision and explain its limiting effect on coverage. Citing *Westrick* v. *State Farm Insurance* (1982) 137 Cal.App.3d 685, 691, footnote 3 [187 Cal.Rptr. 214],[4] plaintiffs assert such affirmative duty of disclosure arose because there was disparity of knowledge between Farmers and Lawrence. Specifically, plaintiffs assert Lawrence's inquiries about the effect his earlier treatments for depression might have on the policies' scope of coverage and Lawrence's disclosed history of mental and psychological instability demonstrated he apparently lacked knowledge—and Farmers had superior knowledge—about the policies' coverage and limitations on coverage.

Plaintiff's theory Farmers breached an affirmative duty of disclosure exceeds the scope of their first amended complaint. Plaintiffs pleaded only breach of contract. Plaintiffs did not allege Farmers breached any duty of disclosure under the theory of *Westrick* v. *State Farm Insurance, supra,* 137 Cal.App.3d 685.[5] Plaintiffs simply alleged Farmers should have known Lawrence was a high suicide risk based on discussions with Lawrence and his disclosure of his history of observation, care and hospital treatment for depression. Moreover, assuming the pleadings could be read as encompassing the issue of Farmers' asserted breach of an affirmative duty of disclosure, the only evidence presented on that issue was consistent with the summary judgment.

---

[4] In *Westrick* v. *State Farm Insurance, supra,* 137 Cal.App.3d 685, the appellate court quoted section 551 of the Restatement Second of Torts: " ' "(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question. (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." ' (*Wells* v. *John Hancock Mut. Life Ins. Co.* [(1978)] 85 Cal.App.3d [66,] at p. 72, fn. 8 [149 Cal.Rptr. 171].)" (*Id.* at p. 691, fn. 3.)

[5] In *Westrick* v. *State Farm Insurance, supra,* 137 Cal.App.3d 685, the complaint alleged the insurer's agents negligently failed to disclose that a welding truck—later involved in an accident—was not covered under plaintiff's existing policy. The complaint sought declaratory relief to establish coverage under the policy. Alternatively, the complaint sought damages for negligent misrepresentation, negligence and estoppel. (*Id.* at pp. 687-688.)

Supporting its motion for summary judgment, Farmers submitted its life claims examiner Olson's declaration asserting she determined Lawrence's death was not covered by Farmers' policies and benefits were not payable due to the policies' suicide provision. Attached to Olson's declaration were copies of the policies. As discussed earlier, the suicide provision of those policies was as a matter of law plain, clear, conspicuous, and unambiguous and thus barred plaintiffs' benefit claims.

Opposing Farmers' motion for summary judgment, plaintiffs submitted their counsel's declaration attaching portions of Farmers' agent Sullivan's deposition. At deposition Sullivan stated when applying for the policies Lawrence asked about any effect his treatment for depression would have on his application and Sullivan replied the decision was up to the underwriter. Sullivan did not recall discussing with Lawrence or Pamela the suicide provision, the two-year contestability provision, or any other policy term or condition.

The mere fact when applying for the policies Lawrence asked Farmers about the effect his treatment for depression might have on his application did not impose upon Farmers an affirmative duty to advise him specifically about the suicide provision and its effect on coverage. The record contained no evidence suggesting Lawrence asked Farmers for coverage for all suicide-related death or asked Farmers whether the policies would cover suicide-related death. ▮ ▮ Neither did the record contain evidence suggesting Lawrence sought clarification of the suicide provision after receiving the policies.[6] In sum, there was no evidence suggesting Farmers knew Lawrence entered the transaction under a mistaken belief the policies would cover all suicide-related death. (*Westrick* v. *State Farm Insurance*, *supra*, 137 Cal.App.3d at p. 691, fn. 3.) Thus, the superior court properly determined there was no triable factual issue whether Farmers was under an affirmative duty to advise Lawrence specifically about the suicide provision and its effect on coverage.

Farmers was entitled to judgment as a matter of law because this record disclosed no triable issue of material fact. The superior court properly granted summary judgment favoring Farmers.

---

[6]"A reasonable person will read the coverage provisions of an insurance policy to ascertain the scope of what is covered. [Citation.]" (*Hallmark Ins. Co.* v. *Superior Court*, *supra*, 201 Cal.App.3d at p. 1019.) " ' "It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms*. It is a duty of the insured to read his policy." ' [Citations.]" (*Hackenthal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1112 [234 Cal.Rptr. 853], italics in original.) Generally the insured is "bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them." (*Sarchett* v. *Blue Shield of California* (1987) 43 Cal.3d 1, 15 [233 Cal.Rptr. 76, 729 P.2d 267].)

## DISPOSITION

The judgment is affirmed.

Work, J., and Froehlich, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 10, 1992.