Filed 5/9/14  Hollingsworth v. JAD Ins. Brokers CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| GERALD V. HOLLINGSWORTH, JR., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JAD INSURANCE BROKERS, INC., <br><br> Defendant and Respondent. | B246708 <br><br> (Los Angeles County <br> Super. Ct. No. BC442362) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

Gary Hollingsworth, in pro. per., and for Plaintiffs and Appellants.

Hewitt & Truszkowski, Stephen L. Hewitt and Henry C. Truszkowski for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiffs Gerald and Ivy Hollingsworth contracted with Sash & Door Specialty, doing business as JCC (JCC), to perform substantial remodeling and construction work on their home in San Marino. JCC never completed the work and the Hollingsworths suffered damage to their home and loss of personal property. In an underlying action, they sued JCC for damages. JCC's commercial general liability (CGL) insurer, ProBuilders Specialty Insurance Company, RRG (ProBuilders), refused to defend the suit based on the coverage provisions of the insurance policy. JCC and the Hollingsworths eventually settled the underlying action. As part of the settlement, JCC assigned to the Hollingsworths JCC's claims against ProBuilders and JCC's insurance broker, JAD Insurance Brokers, Inc. (JAD).

In the present case, the Hollingsworths allege the assigned claims against ProBuilders and JAD. At issue is JAD's motion for summary judgment, which the trial court granted.[1] We affirm.

## FACTS AND PROCEDURE

### 1. *Allegations of the Complaint*

The allegations of the operative complaint, the fourth amended complaint, are as follows. On or about August 7, 2007, the Hollingsworths contracted with JCC to perform remodeling and construction work on their home in San Marino. The Hollingsworths asked JCC whether it had liability insurance that "would cover any damages incurred by [the Hollingsworths] or [JCC] by an accident or occurrence during the course of the construction work." JCC advised the Hollingsworths it had a CGL policy from ProBuilders covering a minimum of $1 million per occurrence.

---

[1] ProBuilders' demurrer, which the trial court sustained without leave to amend, was the subject a previous nonpublished appeal, *Hollingsworth v. ProBuilders Specialty Insurance Company* (Oct. 28, 2013, B239118). We affirmed the judgment for ProBuilders in that appeal and held ProBuilders had no duty to defend or indemnify JCC because the damages claimed by the Hollingworths fell within exclusions in the policy.

2

JCC commenced the remodeling project in August 2007 and was supposed to complete it in six months. Almost immediately after work commenced, problems developed. Inadequate supervision and incompetent laborers caused extensive damage to the home. In December 2007, the Hollingsworths terminated JCC, following numerous requests to adequately staff the job and perform the work. The damage caused by JCC displaced the Hollingsworths from their home for more than two years.

In January 2008, the Hollingsworths retained an attorney and tried to informally resolve their claims against JCC. Their attorney also contacted ProBuilders as JCC's CGL insurer. ProBuilders refused to participate in informal dispute resolution with JCC and the Hollingsworths. In July 2008, the Hollingsworths filed the underlying lawsuit against JCC in Los Angeles Superior Court, *Hollingsworth v. Sash & Door Specialty dba JCC* (2010) No. GC041251, alleging negligence and other causes of action. JCC promptly tendered defense of the action to ProBuilders. ProBuilders refused to defend the underlying action and denied coverage. It maintained the damages suffered by the Hollingsworths were not the result of an "occurrence" within the meaning of the policy, or certain exclusions applied.

In February 2010, the Hollingsworths and JCC settled the underlying action for $60,000. JCC also agreed to a stipulated judgment against it for $450,000. Additionally, JCC assigned all of its claims against ProBuilders and JAD to the Hollingsworths.

The Hollingsworths thus bring the present complaint as assignees of JCC. They allege causes of action against JAD for breach of contract and negligence as follows. An oral contract was formed when JCC discussed its insurance needs with JAD, and JAD agreed to provide JCC with insurance that met those needs in exchange for a fee. In or before February 2007, JCC "specifically advised JAD that [JCC] sought the broadest possible liability insurance coverage that would insure and indemnify [JCC] against any and all liability that [JCC] may incur as a result of negligence during the operation of [JCC]'s construction business, including insurance coverage that would

3

cover claims for . . . property damage occurring during the course of [JCC]'s construction operations, and/or arising from [JCC]'s negligence." JAD advised JCC that it had obtained the insurance JCC wanted and that the ProBuilders policy "provided the broadest possible liability coverage as allowed under the law, and covered claims made against [JCC] for . . . property damage arising from [JCC]'s negligence occurring during the course of [JCC]'s construction operations." JAD breached the contract because the ProBuilders policy did not provide the broadest possible liability coverage as allowed under the law. It contained an exclusion for property damage to any real property on which JCC was performing operations. JAD also had a duty to procure the liability insurance requested by JCC, and its breach of this duty constituted negligence.

## 2. JAD's Motion for Summary Judgment

The evidence submitted by JAD with its motion for summary judgment was undisputed and consisted of the following. During discovery, JAD propounded interrogatories to the Hollingsworths asking them to describe "the type of insurance coverage requested by" JCC and identify each person who discussed JCC's insurance needs with JAD. In response, the Hollingsworths stated "[q]uestions about the communications between [JCC] and JAD should be directed to these two parties," and they identified only Jean Chu of JCC as a person who discussed JCC's needs with JAD.

JAD submitted Chu's declaration with its motion. Chu was the owner and manager of JCC. From 2003 to 2008, JCC obtained its CGL insurance through JAD. She was the only person from JCC who had direct contact with JAD. In or around February 2007, Chu spoke to JAD about obtaining new insurance. She "did not ask JAD to obtain coverage for JCC which would cover all claims that could be made as a result of JCC's construction operations." Nor did she tell JAD that JCC wanted a "policy in which 'everything would be covered,'" a "policy that provided coverage during the course of construction," or a "policy that provided 'full coverage.'" In

4

March 2007, she received a proposal from JAD for the CGL insurance policy from ProBuilders. She briefly reviewed the proposal and did not request any additional terms or coverage. No one at JAD told her "that 'everything would be covered' under the policies JAD obtained for JCC . . . [,] or that the policies would provide 'full coverage' for all claims made for damages occurring during JCC's construction operations[,] or that the policies provided the broadest possible liability coverage as allowed under the law." During the time in 2007 when Chu worked with JAD to obtain the ProBuilders' policy, Chu did not know the Hollingsworths. She first met them months later, in July 2007. She never asked JAD for any special or different coverage for the Hollingsworths' project.

JAD also submitted the declaration of Angel Huang, executive vice president of JAD. She was the person at JAD who maintained contact with JCC from 2003 through 2008. Her declaration was consistent with Chu's. When JCC first approached her, it asked her to obtain CGL insurance and replicate the coverage JCC had. When Chu approached Huang in February 2007 specifically, Chu did not ask her "to obtain coverage for JCC which would cover all claims that could be made as a result of JCC's construction operations." Nor did Chu ask for a policy that "would provide the 'broadest possible liability coverage as allowed under the law,'" one "in which 'everything would be covered,'" or one "that provided coverage during the course of construction." Huang sent Chu a proposal for the ProBuilders policy that, "on its face, did not purport to provide coverage for all claims that could be made as a result of JCC's construction operations." Additionally, "[t]he proposal, on its face, contained exclusions from coverage." Chu returned the signed proposal, and in March 2007, ProBuilders issued the policy to JCC. Huang never told Chu the policy provided the broadest possible coverage under the law. Chu never requested any special or different coverage in 2007.

In opposition, the Hollingsworths submitted the declaration of Ivy Hollingsworth. Mrs. Hollingsworth had no evidence of the communications between

5

JCC and JAD but attested to what JCC told her. Mrs. Hollingsworth asked whether JCC was covered by liability insurance before entering into the contract with it. Chu assured her JCC was covered by CGL insurance "which would provide coverage for claims arising out of any work and/or accidents in relation to the construction work" at the Hollingsworths' property. The Hollingsworths would not have contracted with JCC otherwise.

The trial court granted JAD's motion for summary judgment. It held JAD had shown JCC did *not* seek from JAD the broadest possibility liability coverage as alleged in the complaint, and JAD was thus entitled to judgment on the breach of contract and negligence causes of action. The Hollingsworths timely appealed from the judgment for JAD.

## STANDARD OF REVIEW

A defendant may move for summary judgment when it contends an action has no merit. (Code Civ. Proc., § 437c, subd. (a).) The defendant has met its burden of showing a cause of action is meritless if it demonstrates one or more elements of the cause of action cannot be established or there is a complete defense to the cause of action. (§ 437c, subd. (p)(2).) The defendant need not support its motion with affirmative evidence negating an essential element of the plaintiff's case. Instead, it may show the absence of evidence supporting the plaintiff's case using factually devoid discovery responses or other means. (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590.)

Once the defendant has met its burden, the burden shifts to the plaintiff to set forth specific facts showing a triable issue of material fact. The plaintiff may not rely upon the mere allegations or denials of its pleadings to show a triable issue of fact. (Code Civ. Proc., § 437c, subd. (p)(2).) An issue of fact is created only by a conflict in the evidence. (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196.)

6

A genuine issue of fact exists if, and only if, the evidence would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  The court shall grant the motion for summary judgment if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)

We review the grant of summary judgment de novo, applying the same legal standard as the trial court in determining whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law.  (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 390.)

## DISCUSSION

An insurance broker represents insurance applicants in transactions with insurers.  (Ins. Code, § 33;[2] *Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 929.)  "Insurance brokers owe a limited duty to their clients, which is only 'to use reasonable care, diligence, and judgment in *procuring* the insurance requested by an insured.'"  (*Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.* (2012) 203 Cal.App.4th 1278, 1283.)  An insurance broker also has a statutory duty to not misrepresent the provisions of a policy.  (§§ 780, subds. (a)-(b), 781, subd. (a).)  Accordingly, a broker may be liable for breach of duty when (1) the broker misrepresents the nature, extent, or scope of coverage (*Pacific Rim*, *supra*, at p. 1283); (2) the client made a specific request for or inquiry about particular coverage and the broker negligently fails to obtain the requested coverage (*ibid*.; *Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1447); or (3) the broker assumes an additional

---

[2]     Further undesignated statutory references are to the Insurance Code.

7

duty by express agreement or by holding itself out as an expert in the field of insurance being sought by the insured (*Pacific Rim*, at p. 1283).

Here, JAD carried its burden on summary judgment of showing the Hollingsworths cannot meet one or more elements of their causes of action for breach of contract and negligence. The Hollingsworths allege JAD agreed to procure a certain type of insurance for JCC and told JCC that the ProBuilders' policy met its requirements. But when JAD asked the Hollingsworths in discovery what evidence they had of communications between JCC and JAD, the Hollingsworths' response lacked any material facts supporting a request for a specific type of insurance. They instead directed JAD to itself and JCC for information about the communications. This evidence, the declarations of Chu (from JCC) and Huang (from JAD), negated the allegations of the complaint. Chu and Huang were the representatives from their respective companies who communicated about insurance coverage. Both indicated Chu never requested the specific insurance coverage alleged in the complaint -- that is, the broadest possible liability insurance allowed under the law or coverage for all damages that could arise during the course of JCC's construction operations. Furthermore, both indicated Huang never represented to Chu that the ProBuilders' policy provided such coverage. When JAD first began working with JCC in 2003, JCC simply asked JAD for CGL insurance consistent with what JCC already had. In 2007, when JCC bought the ProBuilders' policy, it did not make any special requests for the "broadest possible" coverage. In selecting the policy, JCC could not possibly have had the Hollingsworths' requests in mind because it bought the policy months before the Hollingsworths first contacted JCC. JAD's evidence demonstrated (1) there was no request to procure or agreement to provide the insurance coverage described in the complaint, and (2) JAD did not misrepresent that the ProBuilders' policy provided this coverage. Thus, there was no breach of contract or breach of the broker's limited duties to its client.

8

Once JAD marshaled this evidence, it was up to the Hollingsworths to produce specific facts showing a triable issue of material fact. The Hollingsworths failed to show a genuine conflict in the evidence. They "dispute" the Chu and Huang declarations by pointing to statements in Mrs. Hollingsworth's declaration -- specifically, that Chu told Mrs. Hollingsworth JCC's insurance would cover any claim arising out of work or accidents during JCC's construction operations. But there is no true dispute here. Regardless of what JCC said to Mrs. Hollingsworth, Mrs. Hollingsworth had no direct knowledge of the communications between JCC and JAD. Her statements do not contradict any of the evidence from Chu and Huang about their communications. Their communications are what is material when we consider the claim that JAD breached its duties to or an agreement with JCC. A triable issue of fact does not exist.

The Hollingsworths argue it was insufficient to show what Chu did *not* request; rather, JAD had to show what type of insurance Chu affirmatively requested. We are not persuaded by this argument. The complaint sets the boundaries of the issues the defendant must raise and those the court must resolve. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) "[T]he burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint . . . .*" (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) The complaint alleges the type of policy JCC requested and claims JAD did not provide this policy and misrepresented the ProBuilders' policy as complying with JCC's requests. JAD was required to negate only these allegations, and it did so.

The Hollingsworths also assert Chu's credibility is in doubt given her previous assignment of JCC's claims to the Hollingsworths and her now "hostile position" towards them. A desire to test the credibility of a declarant is not a proper basis on which to deny summary judgment. With some exceptions not pertinent here, "[i]f a party is otherwise entitled to a summary judgment . . . , [it] may not be denied on

9

grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations . . . ." (Code Civ. Proc., § 437c, subd. (e).) Even if a declarant's statements are self-serving, unless they are controverted, the court generally must accept them as true and cannot send the case to trial simply to allow the opposing party to cross-examine the declarant or otherwise test his or her credibility. (*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 636.)

The Hollingsworths additionally argue JAD had a duty "to explain the limited coverage" provided by the ProBuilders' policy, and in view of this duty, they should have a chance to cross-examine the witnesses regarding the extent to which JAD explained exclusions in the policy. Relying on *Valentine v. Membrila Ins. Services, Inc.* (2004) 118 Cal.App.4th 462, 466-467 (*Valentine*), they state: "Where a broker had a long term relationship with the insured and knew the risks involved in the insured's business and the insured's concerns regarding adequate coverage, the broker owes a duty to procure a policy with coverage for those risks or at least to explain that the insurance obtained excluded those risks." First, *Valentine* dealt with the damages available after a broker's negligence had been established at trial. The portion of the case the Hollingsworths cite was merely a description of the lower court's reasoning in finding the broker negligent. The *Valentine* court accepted the lower court's reasoning for purposes of determining the appropriate damages, but the broker's breach of duty was not truly the issue in the case. (*Id.* at p. 476.) As such, the case is not authority for the proposition cited by the Hollingsworths.

Second, even if *Valentine* held as the Hollingsworths suggest, this case is distinguishable. In *Valentine*, the broker apparently had "knowledge of . . . his clients concerns" regarding adequate coverage. (*Valentine, supra*, 118 Cal.App.4th at p. 467.) In other words, the clients somehow informed the broker they wanted coverage for risks that ended up falling within policy exclusions. The broker knew the type of coverage the clients wanted, failed to procure that coverage, and failed to explain the

policy excluded such coverage.  As we have discussed, there was no evidence here that JAD knew JCC wanted the type of coverage alleged in the complaint.

The Hollingsworths rely on *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685, 691, to argue similarly that an insurance broker can be liable for mere silence or inaction.  In *Westrick*, the client expressly requested insurance coverage for two specific vehicles.  (*Id.* at p. 690.)  The broker did not inquire further of the client and did not warn him that his current insurance policy would not cover the vehicles.  The client's request for specific insurance, in combination with his long relationship with the broker's agency, the foreseeability of harm, and the broker's inaction, gave rise to the broker's liability for negligence.  (*Id.* at pp. 690, 692.)  Again, the client's request and the broker's resulting knowledge of the client's needs were material.  The evidence does not show similar circumstances here.  The trial court did not err in granting JAD's motion for summary judgment.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.


FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.



KUSSMAN, J.


11