Bertram P. ADLER and Barbara L. Adler, Plaintiffs,

v.

WESTERN HOME INSURANCE COMPANY, Defendant.

No. CV 94–6791–AAH.

United States District Court, C.D. California.

March 3, 1995.

John N. Quisenberry, Dennis Neil Jones, Quisenberry and Barbanel, Los Angeles, CA, for plaintiffs.

Kenneth N. Greenfield, Sharon A. Broughton, San Diego, CA, for defendant.

## DECISION GRANTING PARTIAL SUMMARY JUDGMENT INTERPRETING EARTHQUAKE INSURANCE COVERAGE LIMIT IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANT INSURANCE COMPANY

HAUK, District Judge.

### INTRODUCTION

This is an insurance coverage case requiring a judicial interpretation of a liability limit in an insurance contract. Plaintiffs Bertram P. Adler and Barbara L. Adler ("Adlers") are suing Western Home Insurance Company ("Western") for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing. The Adlers moved this Court for Partial Summary Judgment on the First Claim for Breach of Contract, and Western filed a cross-motion for Summary Judgment on the entire action. The Adlers' motion and Western's cross-motion for Summary Judgment came on regularly for hearing before this Court at 10:00 a.m. on February 13, 1995. Both parties agree that there are no genuine issues of material fact in connection with Western's liability in the first cause of action, and the only issue that remains is an interpretation of the insurance contract. This Court must determine what is Western's maximum liability under the contract for losses to the Alders' home caused by an earthquake, $230,000 or $556,751.

### FACTS

On January 17, 1994, the Northridge earthquake shook the Los Angeles basin and devastated the Adlers' Tarzana home allegedly causing more than $450,000 in damages. In 1989, the Adlers purchased a homeowners insurance policy from Western, policy number 04–113–335, effective from August 4, 1993 to August 4, 1994. Prior to purchasing

the policy, the Adlers discussed their insurance needs with Jay Hector ("Hector"), a broker and salesperson for Western. Hector first presented to the Adlers an initial insurance proposal for homeowners offered by Western. Section I—Property Coverages— of this initial insurance proposal contained standard coverages for Dwelling (Coverage A), Other Structures (Coverage B), Personal Property (Coverage C), and Loss of Use (Coverage D). Section II covered personal liability (Coverage E) and medical payments to others (Coverage F). Each type of Coverage under Section I in the initial insurance proposal contains its own limit: Dwelling limit—$272,000; Other structures limit—$27,200; Personal Property limit—$190,400; Loss of Use limit—$54,400. These limits were carried forth in the final policy after endorsements. Also, the initial insurance proposal excluded coverage for loss to property caused by earthquakes.[1] The Adlers, however, wanted their home insured against earthquakes and did not like the way the limits for the Section I coverages would be calculated in the initial insurance proposal, so after consulting with Hector, they purchased three endorsements.

To alter the way the coverage limits would be calculated under the initial insurance proposal, the Adlers purchased two additional endorsements: "Blanket Protection Plus" and "Inflation Guard." The "Blanket Protection Plus" endorsement provides,

> For **additional premium,** this endorsement changes the way we determine the amount of insurance you have. If a loss occurs, you may choose one of two options.
>
> OPTION 1 BLANKET HOMEOWNER COVERAGE

1. The initial insurance proposal provides in pertinent part:
 SECTION I—EXCLUSIONS
 We do not insure for loss caused directly or indirectly by any of the following.
 . . . . .
 b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mudflow; earth sinking, rising or shifting. . . .

2. The Adlers have chosen this BLANKET HOMEOWNER COVERAGE option, so option two is not relevant in this case.

> We will provide a single blanket limit for the coverages shown under Section I. The blanket limit is the total of the limits of liability stated on the Declaration Page for Coverages A, B, C, and D.[2]

Option one of the "Blanket Protection Plus" endorsement creates a single blanket limit equal to the total of the limits of liability stated in the Declarations for coverages A, B, C & D. Moreover, purchasing this "Blanket Protection Plus" coverage automatically entitled the Adlers to receive "Inflation Guard" coverage, which provides that the limits of liability for Coverages A, B, C and D will be increased annually by the percentage shown in the declarations, which is five percent. As of January 17, 1994, the total of the limits of liability under the blanket protection plus for Coverages A, B, C, and D is $544,000, and when this figure is adjusted for the Inflation Guard, the total coverage limit according to the Adlers is increased to $556,751.

The Adlers also purchased a third endorsement that would give them earthquake coverage for loss to dwelling (Coverage A), other structures (Coverage B), personal property (Coverage C), and loss of use (Coverage D). The earthquake endorsement, form U–8345 (1–91), provides in pertinent part:

> For an additional premium, we insure for direct physical loss to property covered under Section I caused by earthquake including land shock waves or tremors before, during or after a volcanic eruption. Limit of Liability. We provide a single, aggregate limit of liability, which applies to the Dwelling, Other Structures, Personal Property and Loss of Use for losses caused by earthquake. If a loss occurs, our limit of liability will not exceed the EARTHQUAKE LIMIT of $____*.[3]

3. A footnote denoted by an asterisk in the earthquake endorsement, form U–8345, provides, " *Entries may be left blank if shown elsewhere in this policy for this coverage," but it does not direct the reader where the limit in the policy is shown.

The Declaration page in the Adlers' policy states, "EARTHQUAKE LIMIT OF $230,000. FOR EXPLANATION SEE FORM U8345." Form U–8345 is the earthquake endorsement stated in the text above, and it does not provide an explanation for how this $230,000 figure is derived. In fact, the space where the limit num-

This EARTHQUAKE LIMIT is part of, not in addition to, the limits of liability stated in this policy for Coverage A, B, C & D. Therefore, your earthquake coverage does not increase your Section I limits of liability.

Other provisions of this policy will not increase this EARTHQUAKE LIMIT

. . . . .

All other provisions of this policy apply.

These three endorsements thus amend the initial insurance proposal and so become part of the final policy, a complete copy of which is attached as exhibit A to Plaintiffs' Complaint.

After the Adler's home was severely damaged by the Northridge earthquake, the Adlers notified Western of their loss and have fulfilled all their conditions under the contract. Western has taken the position that its total limit of liability in this case is $230,000 and that the "Blanket Protection Plus" endorsement does not apply to damages caused by earthquakes. Western has paid this $230,000 to the Adlers.

However, the Adlers are facing losses allegedly very much in excess of $230,000 that are as of this date rising and not fully determined. The Adlers contend that the "Blanket Protection Plus" endorsement applies so as to increase the limit for all Section I damages caused by all covered perils including earthquakes. Bertram Adler declares that he discussed his policy with Jay Hector before purchasing it. Hector told him that the blanket protection plus coverage would "kick in" if there was any problem with any of the policy limits, and Bertram Adler understood that the blanket protection plus and inflation guard applied to earthquakes. (Declaration of Bertram Adler ¶ 3).

### ISSUE

What is Western's maximum limit of liability when the Adlers' Section I property is damaged by an earthquake—$556,751 or $230,000?

ber should be listed is left blank. The Court finds that this contradictory language in Western's insurance policy is convoluted, inherently

### DISCUSSION

For summary judgment pursuant to Federal Rule of Civil Procedure 56(c), the moving party must "show that there is no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In an insurance contract context, the interpretation of an insurance policy is a question of law absent any dispute as to the underlying facts. *Merced Mut. Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 45, 261 Cal.Rptr. 273 (1989). Determining and giving meaning to an insurance policy is the responsibility of the Court, for leaving the interpretation of a contract to a jury is error. *Parsons v. Bristol Develop. Co.*, 62 Cal.2d 861, 865, 44 Cal.Rptr. 767, 402 P.2d 839 (1965). Since this case provides no "genuine issue as to material fact," Summary Judgement is ripe, and the Court is left only to interpret the insurance contract.

### *RULES OF INSURANCE POLICY INTERPRETATION*

The California Supreme Court has summarized the rules of insurance policy interpretation in *La Jolla Beach and Tennis Club, Inc. v. Industrial Indemnity*, 9 Cal.4th 27, 36 Cal.Rptr.2d 100, 884 P.2d 1048 (1994). The ordinary rules of contract interpretation apply to insurance contracts. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." Cal.Civ.Code § 1636. Such intent is to be inferred, if possible, solely from the "written provisions of the contract." *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). If contractual language is clear and explicit, it governs. Cal.Civ.Code § 1638.

If the agreement contains an ambiguity that is not eliminated by the language and context of the policy, the ambiguities

confusing to the insured, and is justified by Western's counsel by circular reasoning that doubles back on itself.

should be construed against the party who caused the uncertainty to exist in order to protect the insured's reasonable expectation of coverage. *Bay Cities Paving and Grading, Inc. v. Lawyers' Mutual Ins. Co.,* 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993). An insurance policy provision is ambiguous when it is capable of two or more reasonable constructions. *Id.* Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. *Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640 P.2d 764 (1982). Moreover, ambiguity may relate to the limits of coverage, *Continental Casualty Co. v. Phoenix Construction,* 46 Cal.2d 423, 437–8, 296 P.2d 801 (1956), or from contradictory or necessarily inconsistent language in different portions of the policy. *Delgado v. Heritage Life Ins. Co.,* 157 Cal.App.3d 262, 271, 203 Cal.Rptr. 672 (1984).

 Language in a contract must be construed in the context of that instrument as a whole and the circumstances of that case, and it cannot be found ambiguous in the abstract. *Bank of the West,* 2 Cal.4th 1254 at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545. In construing insurance contracts, the entire contract is to be construed together for the purpose of giving force and effect to each clause. *New York Life Ins. Co. v. Hollender,* 38 Cal.2d 73, 81, 237 P.2d 510 (1951). Endorsements on an insurance policy form a part of the insurance contract, so the policy and the endorsements must be construed together. *Narver v. California State Life Ins. Co.,* 211 Cal. 176, 181, 294 P. 393 (1930).

### INTERPRETATION OF THE INSURANCE POLICY

 Interpreting this insurance contract in light of the forgoing law, the Court holds that the plain language of the insurance policy is not "clear and explicit," but contradictory and ambiguous. The ambiguity arises from the insurance policy's internal contradictions because of the language in the blanket protection plus endorsement and the earthquake endorsement. A strained or absurd construction of this contract is not necessary to find the ambiguity.

The earthquake endorsement specifically provides that the "EARTHQUAKE LIMIT is part of, not in addition to, the limits of liability stated in this policy for Coverages A, B, C or D." Thus, although Section I coverages as initially presented to the Adlers *excluded* earthquakes, the Adlers by purchasing the earthquake endorsement *included* earthquake coverage in Section I because the earthquake limit is made a Section I coverage limit in the plain language of the endorsement. The blanket protection plus endorsement and the inflation guard expressly provide that they apply to Section I coverages A, B, C, and D. The blanket limit is the total of the limits of liability stated for Coverages A, B, C and D. Because the blanket plus protection and inflation guard endorsements expressly apply to the limits of liability in coverages A, B, C, and D, and because the earthquake limit is expressly made "a part of" those same coverages, the policy thereby provides that the blanket protection plus and inflation guard coverages apply to the earthquake limit, making it $556,751. This interpretation is reasonable and is now adopted by this Court.

On the other hand, Western's argument is that the blanket protection plus and inflation guard do not increase the earthquake limit. Western contends that the earthquake endorsement is not a Section I coverage. The earthquake endorsement provides a $230,000 limit, and it states, "Other provisions of this policy will not increase this EARTHQUAKE LIMIT." Western contends that since the blanket protection plus and inflation guard are "other provisions" of the policy and since the earthquake endorsement specifically provides that other provisions of the policy will not increase the earthquake limit, the blanket protection plus and inflation guard endorsements do not increase the earthquake limit from $230,000 to $556,751.

Western offers a plausible reasonable interpretation of the policy. However, its argument does not negate the reasonableness of the Court's interpretation. First, the blanket protection plus and inflation guard are not part of the initial insurance proposal but are additional coverages are purchased by the Adlers for an additional premium. It

is reasonable to conclude that the limit on the earthquake endorsement would apply only to the limits in the initial insurance proposal, but not when additional coverages are purchased for an additional premium. Thus, just as the additional coverages (the blanket protection plus and inflation guard) changed the limits under Section I, coverages A, B, C, and D, in the initial insurance proposal, they also changed the earthquake limit since the earthquake endorsement specifically states it is a part of the limit under Section I, coverages A, B, C and D.

Second, the blanket protection plus and inflation guard endorsements do not specifically exclude earthquake coverage. Those endorsements do make specific exclusions. The blanket protection plus provides that it does not apply to land, including land on which the building or structures are located. Moreover, it does not apply to personal liability and medical payments under Section II. Thus, when these endorsements list specific exclusions, it is reasonable to conclude that the earthquake limit is not excluded since it is not among the listed exclusions. Western could have easily at minimal cost resolved this ambiguity by excluding earthquake coverage from the blanket protection plus and inflation guard endorsements. Without a specific exclusion, the insured, the Adlers, were led to believe that these endorsements apply to all Section I coverages except for land.

Moreover, Western's assertion that earthquake coverage is not a Section I coverage is disingenuous. The earthquake endorsement specifically provides that the earthquake limit is "a part of" not "in addition to" the limits of liability stated in coverages A, B, C and D. Section I in the initial insurance proposal covers damages to dwellings caused by various perils not including earthquakes. By paying additional premium the Adlers made earthquakes one of those perils covered under Section I.

Since there are at least two reasonable interpretations, the insurance contract contains an ambiguity pertaining to the limits of liability. The law requires the Court to interpret the ambiguity against the party that drafted the agreement, which in this case is Western, so as to protect the Adlers' reasonable expectation of coverage. *See Bay Cities Paving and Grading, Inc.,* 5 Cal.4th at 867, 21 Cal.Rptr.2d 691. Western could have easily resolved this ambiguity by specifically excluding earthquake coverage from the blanket protection plus endorsement just as it excluded damages to land and Section II coverages. The Adlers reasonably expected that the blanket protection plus would "kick in" whenever any of the Section I limits were reached. Since the earthquake limit by its own terms is part of the Section I limits, the Adlers reasonably believed that the blanket protection plus would apply to the earthquake limit as well. Thus, this Court holds as a matter of law that the insurance contract must be construed to mean that the blanket protection plus and inflation guard endorsements apply to create a blanket limit of $556,751 to Section I coverage when the peril at issue is an earthquake.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

**PARTIAL SUMMARY JUDGMENT INTERPRETING EARTHQUAKE INSURANCE COVERAGE LIMIT IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANT INSURANCE COMPANY**

Plaintiffs' motion for partial Summary Judgment and Defendant's cross-motion for Summary Judgment on the entire action came on regularly for hearing before this Court at 10:00 a.m. on February 27, 1995. After giving full consideration to the oral arguments made by the parties and to all the briefs, declarations and other documents submitted in connection with this matter, and based on the findings of fact and conclusions of law in the Court's DECISION GRANTING PARTIAL SUMMARY JUDGMENT INTERPRETING INSURANCE COVERAGE LIMIT IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANT INSURANCE COMPANY, and good cause appearing;

It is hereby ORDERED, ADJUDGED AND DECREED:

1. That Plaintiff's motion for Partial Summary Judgment on the First Claim for Breach of Contract is GRANTED;

2. That Defendant's motion for Summary Judgment is DENIED;

3. That the blanket protection plus and inflation guard endorsements apply to all Section I limits including the earthquake limit to create an over all blanket limit of $556,751;

4. That Defendant's maximum liability in connection with this matter under the insurance contract is $556,751;

5. That Defendant is liable for Breach of Contract because it has not properly performed under the contract by failing to pay the full amount of proceeds due to Plaintiffs under the contract when performance was due;

6. That, since Defendant has already paid Plaintiffs $230,000 under the contract, it now owes Plaintiffs a maximum of $326,751, the proper amount to be paid according to proof of damages to be determined at trial;

7. That the clerk of this Court shall serve a copy of this order on each and every party of record.