**ZURICH INSURANCE COMPANY,
a Swiss corporation, Plaintiff,**

v.

**SMART & FINAL INC., a Delaware corporation; Smart & Final Stores Corporation, a California corporation; Darryl Dinson, an individual; Frank Said, an individual; Richard L. Michener, an individual; and Lexington Insurance Company, a Delaware corporation, Defendants.**

**SMART & FINAL INC. and Smart Final Stores Corporation, Counterclaimants,**

v.

**ZURICH INSURANCE COMPANY,
Counterdefendant.**

**No. CV 97–6100–RC.**

United States District Court,
C.D. California.

March 5, 1998.

Craig Douglas Aronson, Stephen R. Barry, Hagenbaugh & Murphy, Glendale, CA, for Plaintiff.

Dennett F. Kouri, Becky J. Belke, Meserve Mumper & Hughes, Los Angeles, CA, for Defendants.

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

This matter was heard before Magistrate Judge Rosalyn M. Chapman on March 4, 1998. The plaintiff/counterdefendant Zurich Insurance Company was represented by Craig D. Aronson, attorney-at-law. Defendants/counterclaimants Smart & Final, et. al., were represented by Dennett F. Kouri and Becky J. Belke, attorneys-at-law.

## BACKGROUND

### I

On October 31, 1997, plaintiff/counterdefendant Zurich Insurance Company filed a motion to dismiss defendant Smart & Final, Inc.'s and Smart & Final Stores Corporation's (collectively "Smart & Final") counterclaim for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Essentially, Zurich argues that the counterclaim fails to state a claim upon which relief can be granted since there is no coverage or potential for coverage under the policy issued by it to Smart & Final applicable to an underlying state court legal action filed against Smart & Final by defendant Richard L. Michener ("Michener action"). Counterclaimant Smart & Final filed an opposition to the motion to dismiss the counterclaim on November 10, 1997. On November 17, 1997, Zurich filed a reply memorandum in which it acknowledges that since it has already filed

an answer to the counterclaim, the motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be "technically untimely" and instead should be treated as a motion for a judgment on the pleadings under Fed.R.Civ.P. 12(c). Reply, at 18:7–19–15.

On November 17, 1997, defendant Smart & Final filed a motion for summary adjudication of its breach of contract claim based on Zurich's breach of the duty to defend, with supporting memorandum of points and authorities and declaration of Susan Miller. On November 24, 1997, plaintiff Zurich filed its opposition to the motion for summary adjudication, with supporting exhibits, and a statement of genuine issues in opposition. On December 1, 1997, Smart & Final filed its reply to the opposition to the motion for summary adjudication.

On January 9, 1998, the parties consented to Magistrate Judge Rosalyn M. Chapman conducting all further proceedings in this action.

## II

On August 15, 1997, Zurich Insurance Company, a Swiss corporation, filed a complaint for declaratory relief against defendants Smart & Final Stores Corporation, a California corporation, and Smart & Final Inc., a Delaware corporation, Darryl Dinson, an individual, Frank Said, an individual, Richard L. Michener, an individual, and Lexington Insurance Company, a Delaware corporation.[1] Diversity jurisdiction under 28 U.S.C. § 1332 and an amount in controversy in excess of $50,000.00 are alleged. Complaint ¶¶ 1–8. Zurich seeks a declaratory judgment against defendants declaring the respective rights and duties of Zurich and defendants under insurance policy no. GLO 8212709–00 and any and all policies issued by Lexington with respect to an underlying state court legal action filed by defendant Michener ("Michener action"). Complaint at 9:18–25. Zurich also seeks costs and expenses. Complaint at 9:26–27.

Generally, Zurich alleges the following facts: that Smart & Final are named insureds under commercial general liability ("CGL") insurance policy no. GLO 8212709–00 issued by Zurich for the period October 1, 1995, through October 1, 1996. Complaint ¶ 9. Smart & Final gave notice and tendered a claim to Zurich pertaining to the Michener action. Complaint ¶¶ 10–11, 14–15. In the Michener action, Michener alleged that he was employed by Smart & Final from January 22, 1988, through May 29, 1996; that on May 22, 1996, he was confronted by Dinson and Said, both employees of Smart & Final, and driven without his consent to a motel room where he was interrogated regarding inventory shortages and any mistakes he may have committed during his employment with Smart & Final; that during the interrogation he described his consumption several years earlier of items marked for disposal; that Michener felt coerced and intimidated; that Dinson and Said told him that Smart & Final would take no retaliatory action if he told the truth; however, this was a false statement, and Michener's employment with Smart & Final was terminated on May 22, 1996, without good cause and in retaliation against him for voicing objections to his treatment. Complaint ¶ 13. Zurich denied the claim, determining that there is no potential for coverage and denying both defense of the Michener action and indemnification. Complaint ¶¶ 16–17. Specifically, Zurich contends that the Michener action arises from acts or omissions related to Michener's employment, or its termination, and there is no insurance coverage for bodily injury, property damage or personal injury arising out of "false imprisonment, wrongful termination, harassment, or coercion related to employment, or arising out of any other act or omission related to employment." Complaint ¶ 20(1). Further, Zurich alleges that defendant Lexington issued insurance policies that were in effect at all pertinent times providing defense and indemnity coverage for the claims made in the Michener action. Complaint ¶¶ 12, 20(3)–(4).

On October 10, 1997, Smart & Final, Dinson and Said answered the complaint and Smart & Final filed a counterclaim against

1. On February 26, 1998, Zurich dismissed without prejudice its complaint against defendants Michener and Lexington Insurance Company, pursuant to Fed.R.Civ.P. 41(a)(1).

Zurich.[2] Smart & Final repeats the factual allegations set forth in the complaint regarding the Michener action, the insurance policy, Smart & Final's giving notice and submission of the claim to Zurich, and the like. Counterclaim ¶¶ 32–33, 35–36. In their counterclaim, Smart & Final set forth three causes of action: (1) declaratory relief, (2) breach of insurance contract, and (3) breach of the implied covenant of good faith and fair dealing. In their first cause of action, Smart & Final seek a declaration that the policy is in full force and effect and provides a duty to defend and coverage or indemnification for the false imprisonment claim and other claims set forth in the Michener action, and a declaration that Zurich is responsible for all damages, expenses, costs and attorneys fees attributable to the defense of the Michener action and its settlement.[3] Counterclaim ¶¶ 42–43. In their second cause of action, Smart & Final claim that Zurich breached the insurance contract by refusing without just cause to defend and indemnify Smart & Final. Counterclaim ¶¶ 44–48. In their third cause of action, Smart & Final claim that Zurich acted unreasonably and in bad faith by failing to defend and indemnify them in the Michener action, forcing them to expend monies out of pocket; unreasonably misrepresenting facts and insurance policy provisions relating to coverage of the Michener action; failing to conduct a reasonable, prompt and unbiased investigation; failing to contribute reasonable sums to settlement of the Michener action despite a duty to do so; commencing this action at a time when the Michener action had already been settled and fees and settlement contributions had already been contributed by Smart & Final; and including within the instant litigation individual employees of Smart & Final, Dinson and Said, as well as Michener, the plaintiff in the underlying action. Counterclaim ¶¶ 49–57. Smart & Final seek a declaration that Zurich was obligated to provide and pay for a defense and to pay reasonable sums to effect a settlement

of the Michener action, and refusal to do so was without justification or excuse and was a breach of the insurance contract. Counterclaim 19:1–11. Smart & Final also seek all costs and monies paid to settle the Michener action, plus interest, including prejudgment interest, reasonable attorney fees in defending the Michener action, reasonable attorneys fees in the instant litigation, and punitive or exemplary damages. Counterclaim 19:12–24.

On October 31, 1997, Zurich filed an answer to the counterclaim and raised twelve affirmative defenses.

### III

The documents attached to the counterclaim and the summary judgment documents establish the following facts: Zurich issued CGL insurance policy no. GLO 8212709–00 to Smart & Final for the period of October 1, 1995, to October 1, 1996. See Counterclaim, Exh. A at 21–57; Declaration of Susan Miller, Exh. A at 23–59. The policy provided a $2 million general aggregate limit, a $1 million personal injury and advertising injury limit, a $1 million each occurrence limit, and a $10,000.00 per person medical expense limit. See Counterclaim, Exh. A at 35; Miller Decl., Exh. A at 37. The premium on the policy was $374,400.00, plus a surcharge of $2,321.00, payable in installments. See Counterclaim, Exh. A at 21, 23; Miller Decl., Exh. A at 23, 25.

On October 17, 1996, Richard L. Michener filed a lawsuit, *Michener v. Smart & Final, Inc., et al.*, in the Superior Court for the County of Ventura, case no. CIV 168005. Counterclaim, Exh. B at 58–73; Miller Decl., Exh. B at 60–75. In his first amended complaint, Michener sets forth seven causes of action against defendant Smart Final: false imprisonment, intentional misrepresentation, breach of implied contract of employment, breach of implied covenant of good faith and fair dealing, wrongful termination in violation

---

**2.** Attached to the counterclaim as Exhibit A, and incorporated therein, is a copy of CGL insurance policy no. GLO 8212709–00 entered into between Zurich and Smart & Final for the period of October 1, 1995, to October 1, 1996.

**3.** Attached to the counterclaim as Exhibit B, and incorporated therein, is a copy of the First Amended Complaint in *Michener v. Smart & Final, Inc., et al.*, Ventura County Superior Court case no. CIV 168005.

of public policy, and intentional infliction of emotional distress. Counterclaim, Exh. B at 60–72; Miller Decl., Exh. B at 62–74. The false imprisonment cause of action, which was against defendants Dinson and Said, in addition to Smart & Final, alleged that:

> On May 22, 1996, . . . during work hours and while [Michener] was performing his usual job activities for [Smart & Final], [ ] DINSON, a Loss Prevention Regional Manager of Smart & Final [ ] and [Said], a Loss Prevention Representative of SMART & FINAL [ ], confronted [Michener] without advance notice, warning or explanation and informed him he was to be transported by automobile to the Vagabond Motel, in Oxnard, California, for questioning. [Michener] felt he had no choice in the matter and, without his consent, he was placed in a company vehicle and driven to a motel in Oxnard, California. He was then taken by DINSON and SAID into a motel room where the curtains were drawn and the door was locked and where [Michener] was interrogated for an extended time[,] during which time he was not permitted to see or call family, friends, or legal counsel. DINSON and SAID did not give [Michener] food or drink during the time they detained him. [¶] DINSON and SAID did not charge [Michener] with having committed any crime but instead asked [him] for his explanation regarding [Smart & Final's] inventory shortage and for an admission of any 'mistakes' he may have committed during his employment with SMART & FINAL [ ]. When [Michener] described his consumption of reclamation items . . . a number of years ago, he was asked by DINSON and SAID to prepare and sign a 'confession' [Michener] felt coerced and intimidated and did not believe that he would be allowed to leave the motel room until he signed some sort of document. . . . Consequently, [Michener] wrote and signed the requested document, in order to obtain his release from the detention. . . . [¶] As a proximate result of the acts of [Smart & Final, Dinson and Said, Michener] has suffered humiliation, embarrassment, damage to his self-esteem and reputation, mental anguish and emotional and physical distress. . . .

Counterclaim, Exh. B at 60:20–62:20; Miller Decl., Exh. B at 62:20–64:20.

On or about November 1, 1996, Smart & Final gave Zurich notice of a claim under its insurance policy as a result of the Michener action; however, Zurich refused to defend the Michener action or to indemnify Smart & Final in connection with the Michener action. Complaint, Exh. A at 11–22; Counterclaim, Exh. C at 74; Miller Decl., ¶¶ 4–7, Exhs. C–E at 76–90. Accordingly, Smart & Final retained the services of a law firm, at their own expense, to defend the allegations of the Michener action and paid attorneys fees to said firm. Miller Decl., ¶ 6. On an undetermined date in September of 1997, Smart & Final settled the Michener action and paid money in exchange for its dismissal; however, Zurich did not make any contribution to the settlement. Miller Decl., ¶ 8.

The CGL insurance contract, policy no. GLO 8212709–00, entered into between Zurich and Smart & Final (hereafter "the CGL policy") provides, in Coverage A, liability coverage for "bodily injury" and "property damage" and, in Coverage B, for "personal and advertising injury." Counterclaim, Exh. A at 37–39; Miller Decl., Exh. A at 39–41. Coverage B "applies to 'personal injury' only if caused by an offense: [¶] (1) Committed in the 'coverage territory' during the policy period; and [¶] (2) Arising out of [the insured's] business. . . ." Counterclaim, Exh. A at 39; Miller Decl., Exh. A at 41. Definitions of terms used in the CGL policy are set forth in Section V, which provides, in part:

> " 'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses: [¶] a. False arrest, detention or imprisonment. . . ."

Counterclaim, Exh. A at 45; Miller Decl., Exh. A at 47.

Separately attached to the CGL policy is an employment-related practices exclusion endorsement, which excludes "bodily injury" under Coverage A and "personal injury" under Coverage B arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies, acts, or omissions; or

(4) Consequential 'bodily injury' [and personal injury] as a result of (1) through (3) above.

Counterclaim, Exh. A at 52; Miller Decl., Exh. A at 54. The exclusion under Coverage A "applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury." Counterclaim, Exh. A at 52; Miller Decl., Exh. A at 54.

Section II defines who is insured under the policy. It specifically provides:

Each of the following is also an insured:

a. Your employees, other than your executive officers, but only for acts within the scope of their employment by [the insured]. However, none of these employees is an insured for:

(1) 'Bodily injury' or 'personal injury' to [the insured] or to a co-employee while in the course of his or her employment. . . .

Counterclaim, Exh. A at 40–41; Miller Decl., Exh. A at 42–43.

Supplementary payments under Coverages A and B include, in relevant part:

1. All expenses . . . incur[red]. . . .

* * * * * *

5. All costs taxed against the insured in the 'suit'[.]

6. Pre-judgment interest awarded against the insured on that part of the judgment we pay. . . . These payments will not reduce the limits of insurance.

Counterclaim, Exh. A at 40; Miller Decl., Exh. A at 42.

## DISCUSSION

### IV

Fed.R.Civ.P. 56 authorizes the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict. . . . If reasonable minds could differ," judgment should not be entered in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). An issue of material fact is one that affects the outcome of the litigation and requires a trial to resolve. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Liberty Lobby*, 477 U.S. at 252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

Since Zurich has concurrently filed an answer to Smart & Final's counterclaim and a motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted, this Court shall treat Zurich's motion to dismiss as a motion for a judgment on

the pleadings pursuant to Fed.R.Civ.P. 12(c). *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1301 n. 2 (9th Cir.1992); *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir.1980); *See also* Fed.R.Civ.P. 12(b) (providing that a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6) "shall be made before pleading if a further pleading is permitted."). A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 528 (9th Cir. 1997); *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1460, 137 L.Ed.2d 564 (1997).

## V

This Court, in a diversity case, must decide issues of state law as it believes the state's highest court would decide them. *HS Services, Inc. v. Nationwide Mutual Ins. Co.*, 109 F.3d 642, 644 (9th Cir.1997); *Jones–Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 692 (9th Cir.1992); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1556 (9th Cir.1991). Because this diversity case arose in California, California law applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *HS Services, Inc.*, 109 F.3d at 644.

An insurance company's duty to defend arises from the contractual provisions contained in its standard comprehensive or commercial general liability insurance policies.[4] *Aerojet–General Corp. v. Transport Indemnity Co.*, 17 Cal.4th 38, 70 Cal.Rptr.2d 118, 129–130, 948 P.2d 909 (1997); *Buss v. Superior Court*, 16 Cal.4th 35, 45–47, 65 Cal. Rptr.2d 366, 373, 939 P.2d 766 (1997). An insurer bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy.

*Buss*, 16 Cal.4th at 46, 65 Cal.Rptr.2d at 373, 939 P.2d 766; *Montrose Chemical Corp. of California v. Superior Court*, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 471, 861 P.2d 1153 (1993); *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276–77, 54 Cal.Rptr. 104, 113, 419 P.2d 168 (1966).

"The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage...." *Montrose Chemical Corp.*, 6 Cal.4th at 295, 24 Cal.Rptr.2d at 471, 861 P.2d 1153 (citations omitted). "This duty, which applies even to claims that are 'groundless, false or fraudulent,' is separate from and broader than the insurer's duty to indemnify."[5] *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 378, 900 P.2d 619 (1995) (citations omitted); *Buss*, 16 Cal.4th at 46, 65 Cal.Rptr.2d at 373, 939 P.2d 766. The insurer must look to the facts of the complaint and extrinsic evidence, if available, to determine whether there is a potential for coverage under the policy and a corresponding duty to defend. *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d at 378, 900 P.2d 619; *Montrose Chemical Corp.*, 6 Cal.4th at 295, 24 Cal.Rptr.2d at 470, 861 P.2d 1153. Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 214, 846 P.2d 792 (1993). However, where there is no possibility of coverage, there is no duty to defend. *Buss*, 16 Cal.4th at 46–47, 65 Cal.Rptr.2d at 373–74, 939 P.2d 766; *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d at 378, 900 P.2d 619.

The California Supreme Court has described the general principles governing interpretation of insurance policies, as follows:

Insurance policies are contracts, and, therefore, are governed in the first instance by the rule of construction applicable to contracts. Under statutory rules of

4. As relevant here, Zurich had "the right and duty to defend any 'suit'" seeking damages for a personal injury to which the insurance applies. Counterclaim, Exh. A at 39; Miller Decl., Exh. A at 41.

5. In contrast, "[t]he insurer's duty to indemnify runs to claims that are actually covered, in light of the facts prove[n]. By definition, it entails the payment of money in order to resolve liability. It arises only after liability is established." *Buss*, 16 Cal.4th at 45–46, 65 Cal.Rptr.2d at 373, 939 P.2d 766.

contract interpretation, the mutual intention of the parties at the time the contract is formed governs its interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense' controls judicial interpretation unless 'used by the parties in a technical sense, or unless a special meaning is given to them by usage.' If the meaning a layperson would describe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning. [¶] In contrast, '[i]f there is ambiguity ... it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist.' This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer, but, rather, "the objectively reasonable expectations of the insured." '

*Montrose Chemical Corp. of California v. Admiral Ins. Co.*, 10 Cal.4th 645, 666–67, 42 Cal.Rptr.2d 324, 334, 913 P.2d 878 (1995) (internal punctuation and citations omitted); *Waller*, 11 Cal.4th at 18, 44 Cal.Rptr.2d at 378, 900 P.2d 619; *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 821–22, 274 Cal.Rptr. 820, 831, 799 P.2d 1253 (1990); *see also* California Civil Code §§ 1636,[6] 1638,[7] 1639,[8] 1644,[9] 1649,[10] and 1654.[11]

In the insurance context, ambiguities are generally resolved in favor of coverage. *Montrose Chemical Corp.*, 10 Cal.4th at 666, 42 Cal.Rptr.2d at 335, 913 P.2d 878; *AIU Ins. Co.*, 51 Cal.3d at 822, 274 Cal.Rptr. at 831, 799 P.2d 1253. Similarly, coverage clauses of insurance policies are generally interpreted broadly, in order to protect the objectively reasonable expectations of the insured. *Montrose Chemical Corp.*, 10 Cal.4th at 667, 42 Cal.Rptr.2d at 335, 913 P.2d 878; *AIU Ins. Co.*, 51 Cal.3d at 822, 274 Cal.Rptr. at 831–32, 799 P.2d 1253; *See also Bodell v. Walbrook Ins. Co.*, 119 F.3d 1411, 1413 (9th Cir.1997) (stating that "California law ... teaches that insurance policies are to be broadly construed to afford the greatest possible protection to the insured."). "These rules stem from the fact that the insured typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to bargain for modifications. Because the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage." *Montrose Chemical Corp.*, 10 Cal.4th at 667, 42 Cal.Rptr.2d at 335, 913 P.2d 878 (citations omitted); *AIU Ins. Co.*, 51 Cal.3d at 822, 274 Cal.Rptr. at 832, 799 P.2d 1253. Thus, "so long as coverage is available under any reasonable interpretation of an ambiguous clause, the insurer cannot escape liability." *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 197, 110 Cal.Rptr. 1, 3, 514 P.2d 953 (1973); *De May v. Interinsurance Exchange of Auto. Club of Southern Calif.*, 32 Cal.App.4th 1133, 1137, 38 Cal. Rptr.2d 581 (1995).

**6.** Cal.Civ.Code § 1636 provides that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

**7.** Cal.Civ.Code § 1638 provides that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

**8.** Cal.Civ.Code § 1639 provides, in pertinent part, that "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible...."

**9.** Cal.Civ.Code § 1644 provides that "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to

their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."

**10.** Cal.Civ.Code § 1649 provides that "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."

**11.** Cal.Civ.Code § 1654 provides that "[i]n cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

In addition to the general contract interpretation rules, there are special rules applicable to exclusions.[12] Croskey et al., *California Practice Guide: Insurance Litigation* ¶ 3:138 (Rev. # 1 1996). Thus, although the insured has the burden of proving the contract of insurance and its terms, the insurer bears the burden of bringing itself within a policy's exclusionary clauses. *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 879–80, 151 Cal.Rptr. 285, 292, 587 P.2d 1098 (1978); *Executive Aviation, Inc. v. National Ins. Underwriters*, 16 Cal.App.3d 799, 806, 94 Cal.Rptr. 347 (1971); *HS Services, Inc.*, 109 F.3d at 645. Further, exclusionary clauses are strictly construed against the insurer and in favor of the insured. *Crane v. State Farm Fire and Casualty Co.*, 5 Cal.3d 112, 115–16, 95 Cal.Rptr. 513, 514, 485 P.2d 1129 (1971); *HS Services, Inc.*, 109 F.3d at 645. Thus, any provision that takes away or limits coverage reasonably expected by the insured must be "conspicuous, plain and clear" to be enforceable. *State Farm Mut. Auto. Ins. Co.*, 10 Cal.3d at 202, 110 Cal.Rptr. at 6, 514 P.2d 953; *Feurzeig v. Insurance Co. of the West*, 59 Cal.App.4th 1276, 1283, 69 Cal.Rptr.2d 629 (1997); *20th Century Ins. Co. v. Liberty Mutual Ins. Co.*, 965 F.2d 747, 753 (9th Cir. 1992). Moreover, this rule applies regardless of the reasonable expectations of the insured. *20th Century Ins. Co.*, 965 F.2d at 753; *Chu v. Allianz Life Ins. Co. of North America*, 980 F.Supp. 1086, 1092 (N.D.Cal.1997).

Whether an exclusion or limitation is "conspicuous, plain and clear" is a question of law. *Malcom v. Farmers New World Life Ins. Co.*, 4 Cal.App.4th 296, 300, 5 Cal.Rptr.2d 584 (1992); *Jauregui v. Mid–Century Ins. Co.*, 1 Cal.App.4th, 1544, 1552, 3 Cal.Rptr.2d 21 (1991). "A limitation is conspicuous when it is positioned and printed in a form which adequately attracts the reader's attention to the limitation." *Feurzeig*, 59 Cal.App.4th at 1283, 69 Cal.Rptr.2d 629; *Shepard v. Calfarm Life Ins. Co.*, 5 Cal.App.4th 1067, 1079, 7 Cal.Rptr.2d 428 (1992). "Courts have invalidated exclusions under the conspicuous requirement where (1) they are not included under the exclusion section and are placed on an overcrowded page; (2) they are included in a 'General Limitations' section but in a dense pack format; or (3) they are hidden in fine print in a policy section bearing no clear relationship to the insuring clause." *Merrill & Seeley, Inc. v. Admiral Ins. Co.*, 225 Cal.App.3d 624, 630–31, 275 Cal.Rptr. 280 (1990); *Zubia v. Farmers Ins. Exchange*, 14 Cal.App.4th 790, 795, 18 Cal.Rptr.2d 65 (1993). However, courts have determined that exclusion clauses found under descriptive headings and printed in a size and intensity identical to the rest of the policy are conspicuous as a matter of law. *National Ins. Underwriters v. Carter*, 17 Cal.3d 380, 384–85, 131 Cal.Rptr. 42, 45–46, 551 P.2d 362; *Zubia*, 14 Cal.App.4th at 705–96, 18 Cal.Rptr.2d 65; *Cal–Farm Ins. Co. v. TAC Exterminators*, 172 Cal.App.3d 564, 577–78, 218 Cal.Rptr. 407 (1985). Here, although in a different section of the policy than the insuring clause to which it relates, the exclusion clause is found under the bold face heading "Employment–Related Practices Exclusion" and it is printed in the same size and intensity as the rest of the policy, and, therefore, is conspicuous as a matter of law. *National Ins. Underwriters*, 17 Cal.3d at 384–85, 131 Cal.Rptr. at 45–46, 551 P.2d 362; *Zubia*, 14 Cal.App.4th at 705–96, 18 Cal.Rptr.2d 65; *Cal–Farm Ins. Co.*, 172 Cal.App.3d at 577–78, 218 Cal.Rptr. 407.

Conspicuous placement of exclusionary language is only one of two rigid drafting rules required of insurers to exclude or limit coverage; the language itself must be plain and clear. *Feurzeig*, 59 Cal.App.4th at 1283, 69 Cal.Rptr.2d 629; *Jauregui*, 1 Cal.App.4th at 1550, 3 Cal.Rptr.2d 21. To be plain and clear, the limitation should be precise and understandable. *Feurzeig*, 59 Cal.App.4th at 1283, 69 Cal.Rptr.2d 629; *Malcom*, 4 Cal.App.4th at 300, 5 Cal.Rptr.2d 584; *Jauregui*, 1 Cal.App.4th at 1550, 3 Cal.Rptr.2d 21. "To be effective in this context, the exclusion

---

**12.** Exclusions do not come into play unless some other policy provisions confers coverage in the first instance. *Hurley Construction Co. v. State Farm Fire & Casualty Co.*, 10 Cal.App.4th 533, 540, 12 Cal.Rptr.2d 629 (1992). Here, there seems to be no dispute over Coverage B's coverage for false arrest or imprisonment. *See* Zurich's Opposition to Summary Adjudication, 3:55–11; Smart & Final's Reply, 2:10–12.

must be couched in words which are part of the working vocabulary of average lay persons." *Ponder v. Blue Cross of Southern California,* 145 Cal.App.3d 709, 723, 193 Cal. Rptr. 632 (1983); *Malcom,* 4 Cal.App.4th at 300, 5 Cal.Rptr.2d 584; *Jauregui,* 1 Cal. App.4th at 1550, 3 Cal.Rptr.2d 21.

■ Here, the exclusion language cited by Zurich is not "plain and clear." Specifically, Zurich relies on the "catch-all" phrase "or other employment-related practices, policies, acts or omissions" to bring itself within the employment-related practices exclusion to Coverage B. In a case remarkably similar to this action, the Ninth Circuit recently reversed a grant of summary judgment in favor of the insurer based on this same employment-related practices exclusion, noting:

> Read literally and broadly the terms 'arising out of' and 'employment-related ... acts or omissions' would include any claim or injury connected in any way with employment termination, no matter how attenuated that connection. We do not think the parties mutually intended the exclusion to be read so expansively.

*HS Services, Inc.,* 109 F.3d at 645 (emphasis added).

Moreover, following as it does specific examples of employment-related conduct excluded from coverage, the "catch-all" phrase does not plainly and clearly show that the exclusion applies to a false arrest or imprisonment claim, for which coverage is provided. *HS Services, Inc.,* 109 F.3d at 646; *Adler v. Western Home Ins. Co.,* 878 F.Supp. 1329, 1334 (C.D.Cal.1995). Rather, as applied to a false arrest or imprisonment claim, the undefined phrase "other employment-related practices, policies, acts or omissions" is ambiguous. *Feurzeig,* 59 Cal.App.4th at 1282, 69 Cal.Rptr.2d 629; *HS Services, Inc.,*

109 F.3d at 646. That is, the policy defines "personal injury" coverage (Coverage B) as including "false arrest, detention or imprisonment" and other specifically enumerated conduct. The exclusion then specifically excludes employment-related conduct, such as defamation, from Coverage B, but does not specifically exclude false arrest or imprisonment from Coverage B. Thus, false arrest or imprisonment is not specifically excluded in the employment-related context, and the insured, Smart & Final, undoubtedly had a reasonable expectation of coverage for claims of false arrest or imprisonment.[13]

Furthermore, one cannot assume causation between the false imprisonment and Michener's ultimate suspension and termination; rather, the false imprisonment arose solely in the context of loss prevention.[14] Eliminating loss from a private company is a full-time occupation, which requires loss prevention officers to work with employees as well as numerous other persons.[15] *See Lawson v. Straus,* 673 So.2d 223, 227 (La.App.), *writ denied,* 678 So.2d 556 (1996) (holding a policy exclusion provision "arising out of ... any personnel practices, policies, acts, or omissions" does not exclude claims by ex-employees for assault and battery, noting that "[t]he mere fact that an employee is involved does not mean that a 'personnel practice', etc. is at issue or the exclusion would have been written to simply state that no claims by employees are covered. We believe that 'personnel practices', etc. refers to the usual dealing of employers with employees, in their specific status as employees, such as hiring and firing, promotion and demotion, wages paid and hours worked.").

■ Thus, applying the basic principles of insurance contract interpretation discussed above, this Court finds that Zurich has not met its burden to bring itself within the

---

**13.** This analysis distinguishes the instant case from *Frank and Freedus v. Allstate Ins. Co.,* 45 Cal.App.4th 461, 471, 52 Cal.Rptr.2d 678 (1996), a case involving a claim for defamation, which, unlike the false imprisonment claim here, was specifically excluded in the employment context.

**14.** Since the false imprisonment claim in this case was not clearly employment-related, Zurich's reliance on Frank and Freedus and *Loyola Marymount Univ. v. Hartford Accident & Indem.*

*Co.,* 219 Cal.App.3d 1217, 271 Cal.Rptr. 528 (1990) is misplaced. *See HS Services, Inc.,* 109 F.3d at 646–47.

**15.** In this day and age, it is not unusual, for example, for shoplifters to be taken into custody by loss prevention personnel and then to file claims of false arrest. *See, e.g., Jones v. Kmart Corp.,* 17 Cal.4th 329, 70 Cal.Rptr.2d 844, 949 P.2d 941 (1998).

employment-related practices exclusion, and it had a duty to defend Smart & Final against the false imprisonment claim in the Michener action. Furthermore, since Zurich had a duty to defend Smart & Final on one cause of action, it had a prophylactic duty to defend Smart & Final against all the claims in the Michener action "because to defend meaningfully, it must defend immediately, and to defend immediately it must defend entirely." *Aerojet–General Corp.*, 70 Cal. Rptr.2d at 131, 948 P.2d 909; *Buss*, 16 Cal.4th at 48, 65 Cal.Rptr.2d at 375, 939 P.2d 766.

### ORDER

1. Counterdefendant Zurich Insurance Company's motion for a judgment on the pleadings (counterclaim) under Fed.R.Civ.P. 12(c) is DENIED.

2. Counterclaimant Smart & Final Inc.'s and Smart & Final Stores Corporation's motion for summary adjudication of its breach of contract claim is GRANTED as to Zurich Insurance Company's duty to defend, and pursuant to Fed.R.Civ.P. 54(b), the Court finds there is no just reason for delay and judgment shall be entered accordingly.