**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRISTOPHER PERKINS, an individual and CALIFORNIA ONCOLOGY OF THE CENTRAL VALLEY MEDICAL GROUP, INC., a California corporation, | No. 09-15831 |
| | D.C. No. 1:08-cv-00687-LJO-SMS |
| Plaintiffs - Appellants, | MEMORANDUM* |
| v. | |
| MARYLAND CASUALTY COMPANY, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted April 12, 2010
San Francisco, California

Before: KLEINFELD, TASHIMA and THOMAS, Circuit Judges.

We review the district court's grant of summary judgment *de novo*. Carmen

v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001). This is a diversity

jurisdiction case. Therefore, we apply the law of the forum state, California, and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

must decide issues of state law as we believe the highest court of that state would decide them. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); HS Servs., Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 644 (9th Cir.1997).

Under California law, an insurer's duty to defend against litigation brought against the insured by a third party arises whenever the insurer ascertains facts that give rise to even the potential for indemnity under the policy. Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (Cal. 2005). In determining whether there is a duty to defend, the insurer looks not only to the facts of the complaint, but also to extrinsic evidence available from any source regarding the facts of the underlying litigation. Id. at 654. Any doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured. Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (Cal. 1993).

Perkins argues that the potentially covered claim in this litigation is McQuown's potential claim for false imprisonment, based on her testimony that Cardoza backed her and "bottled" her against a wall for two to three minutes while yelling at her. Under California law, the elements of the tort of false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without

2

lawful privilege, and (3) for an appreciable period of time, however brief." Lyons v. Fire Ins. Exch., 161 Cal. App. 4th 880, 888 (Cal. App. 2008). Based on the facts available to the insurer, McQuown could possibly have asserted a plausible claim for false imprisonment.

Maryland argues that any potential claim could not possibly have been covered because it would have been excluded by the employment-related practices exclusion of the policy. The exclusion applies to personal injury to a person "arising out of any . . . [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person. . . ." The exclusion does say that it arises out of "any" employment -related acts, but then qualifies "any" with "such as" followed by a list of examples. The question, thus, is whether false imprisonment in the present context is similar enough to the listed examples for the exclusion to apply. The answer is unclear, and the provision therefore ambiguous. Because we construe ambiguities in an insurance policy *contra proferentem*, as well as in favor of the insured, see Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc), we hold that the exclusion does not apply and the insurer had a duty to defend.

3

We conclude that the insurance company had a duty to defend its insured against the underlying litigation, arising out of the dispute between the insured's employees Nina McQuown and Cheryl Cardoza. The facts known to the insurer established the possibility that McQuown could assert a false imprisonment claim within the coverage and outside the exclusion under the interpretation of California law in <u>Zurich Ins. Co. v. Smart & Final Inc.</u>, 996 F. Supp. 979 (C.D. Cal. 1998).

**REVERSED.**

*Perkins v. Maryland Casualty Company*, No. 09-15831

TASHIMA, Circuit Judge, dissenting:

I respectfully dissent.

In my view, the plain language of the insurance policy excludes from coverage any claim for false imprisonment when that claim arises out of employment-related acts. Because the confrontation underlying McQuown's lawsuit was clearly employment related, any potential claim for false imprisonment was therefore unambiguously excluded from coverage.

The fundamental flaw in the majority's reasoning is its conflation of the *offenses* that broadly define the policy's coverages and exclusions with the *acts* that give rise to those offenses. The policy treats the two in a fundamentally different manner. Its inclusionary and exclusionary provisions speak in terms of offenses. In contrast, it uses the acts that give rise to those offenses as the means of qualifying the precise circumstances under which coverage does or does not exist.

This structure is apparent from the policy's use of the phrase "personal and advertising injury" to define its coverage. The policy defines this phrase in terms of offenses: "'Personal and advertising injury' means injury . . . arising out of one or more of the following offenses . . . ." Importantly, all of the enumerated offenses are actionable torts; they include false arrest, malicious prosecution,

wrongful eviction, slander and libel, and copyright infringement.

Outside of this definition, references in the policy to "personal and advertising injury" speak in terms of the acts that give rise to the enumerated offenses. This is true for the policy's primary coverage provision: "This insurance contract applies to 'personal and advertising injury' caused by *an offense arising out of* your business . . . ." The policy's general exclusionary provision uses similar language; it excludes, for example, injuries "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another," as well as injuries "[a]rising out or oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." The specific exclusion at issue in this case is no different. It provides that coverage does not apply to "personal and advertising injury . . . arising out of any . . . [e]mployment-related practices, policies, acts or omissions . . . ."

Thus, the correct question before us is not, as the majority frames it, "whether false imprisonment in the present context is similar enough to the listed examples [of employment-related acts] for the exclusion to apply." Maj. dispo. at 3. False imprisonment is an offense, not an act; comparing it to the examples of employment-related acts is comparing apples to oranges. The correct question is whether the acts that give rise to McQuown's false imprisonment claim –

Cardoza's upbraiding of McQuown and momentarily trapping her against the wall – were "employment-related acts" similar to the example of "acts" listed in the policy exclusion.[1]  It is difficult to conclude other than that Cardoza's acts were similar to the acts listed in the exclusion.

Thus, I conclude that the policy's language and structure unambiguously excludes McQuown's potential false imprisonment claim from its coverage as employment related.  I would therefore affirm the district court.

---

[1]     The listed employment-related acts are acts "such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliaion or discrimination directed at that person . . . ."